Winthrop A. Johns and Mozart G. Ratner, both of Washington, D. C., for petitioner.

Paul Y. Davis, of Indianapolis, Ind., for respondents.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

**RELIANCE MFG. CO., et al. v. NATIONAL LABOR RELATIONS BOARD.**

No. 7580.

Circuit Court of Appeals, Seventh Circuit.

July 8, 1944.

MAJOR, Circuit Judge.

This controversy arises by reason of the National Labor Relations Board's petition to adjudge Reliance Manufacturing Company, A. T. Bard, Harold R. Powers, Edward Hickman, Ray Hager and Frances Wyant Shute (the individuals being officers and agents of the Company), in contempt of this court for their failure to comply with our decree entered February 16, 1942.[1] A rule to show cause was issued March 29, 1942, to which answers have been filed by respondents. The Board

---

[1] The decree was entered pursuant to an opinion filed December 20, 1941. Reliance Mfg. Co. v. N. L. R. B., 7 Cir., 125 F.2d 311.

then moved for an adjudication upon the pleadings. Briefs have been filed by the respective parties, and oral argument was heard upon such motion.

The decree which petitioner asserts has been violated enjoins respondent and its officers and agents, among other things, from interfering with, restraining, or coercing its employees in the exercise of their organizational rights. After the entry of such decree, the Union renewed its campaign and petitioned the Board to conduct an election to resolve the question of representation at respondent's Huntington West Virginia, plant. Accordingly, the Board scheduled an election to be held under its auspices on October 21, 1943, in an appropriate unit. The employees were to vote "Yes" if they desired to be represented by the Union or "No" if they did not.

It is the contention of the Board that respondents injected themselves into this purely employee concern and launched an intensive drive to defeat the Union in the election. One of the admitted facts, and the one around which the controversy largely revolves, is that respondents on October 20, 1943 (the day before the election) inserted a full page advertisement in the local morning newspaper, which consisted solely of the legend, "Rely on Reliance," printed in three inch, bold-face type spread diagonally across the page, and the signature "Reliance Manufacturing Company, Huntington, West Virginia" in smaller type at the bottom of the page. On the following day (the day of the election), the same advertisement was inserted in both the morning and afternoon local papers. These advertisements were inserted according to respondents' answers, in reply to attacks which had been made upon the Company by the Union, so that the employees might not be misled into voting for the Union. It is further asserted that the legend "Rely on Reliance," had been the Company's advertising slogan for many years.

On the morning of the first publication, so it is alleged, twenty-eight of respondent's thirty foremen commenced their day's work with the published legend attached to their persons. Some of such legends, in addition to the words, "Rely on Reliance," contained the words, "Vote No." While respondents do not admit all the allegations in this respect, it is admitted that one forelady over about twenty-four employees, with an advertisement taken from the newspaper and pinned on her back, attended a morning meeting of the supervisory staff. Neither her immediate superior, who was present, nor any other representative of respondent, ordered its removal. It is also admitted that two foreladies wore signs, "Vote No," but it is asserted that some pro-Union members also wore signs favorable to their side. It is admitted that some of the signs worn by anti-Union members were made from Company material, on Company premises and time, and that certain supervisory employees assisted in the lettering of such signs. It is admitted that certain foreladies polled employees regarding their voting intentions, told them they would be better off without a Union, and that a Union is like a dictator. It is admitted that one forelady shouted from a window of the plant to an employee who had received a leaflet from a Union organizer, "Throw that down." As to many of the charges made against supervisory employees, respondents assert that they were without their knowledge and in some instances contrary to positive instructions.

The petition alleges that on the day prior to the election certain of respondents purchased drinks and lunch for the night shift employees. Such is admitted by the answer, but it is asserted that this was pursuant to a customary practice and not for the purpose of influencing the result of the election. It is alleged in the petition that respondents' superintendent on the evening before the election said to a group of employees who were wearing anti-Union signs, "We appreciate what has been done. We are going to let you off for tonight with pay." After some further conversation the employees were told that they would be paid for a full night's work. Respondents do not deny such statements but claim they were not made for any improper purpose. It also is alleged that certain of the respondents, shortly after the election result was announced, celebrated the Union defeat and that employees were invited over to a hotel, where refreshments were served. Such conduct on the part of respondents is not denied, but it is sought to be excused as an expression of the Company's pleasure at the manifestation of confidence shown by its employees.

While the answer is sufficient to require proof as to many of the allega-

tions contained in the petition, we have little hesitancy in concluding that the admissions taken together are sufficient to disclose an unjustifiable interference with the employees' rights to vote for a Union of their own choosing. Especially is this so when we take into consideration, as we think we have a right to do, respondents' hostility toward the Union. It is rather plain that respondents sought to convert a contest which was rightfully one between employees into a contest between a group of employees and the Company. In doing so, it aligned itself with one group of employees and against another, to the advantage of the former and to the disadvantage of the latter. While management may have a right under some circumstances to express its opinion as to a Union or its preference between Unions, such right certainly does not extend to the point where it becomes a participant in a contest to which it is not a party.

Respondents cite a number of cases in support of their contention that by the newspaper publications they were merely exercising the privilege of free speech.[1] It is further contended that the acts of supervisory employees in wearing such legend at the plant was a further exercise of such privilege. Without reviewing the cited cases, it is sufficient to note that in our judgment none of them goes so far as to sustain the privilege under the circumstances of the instant case.

The newspaper advertisement on its face, in connection with respondents' hostile attitude toward the Union, is open to grave suspicion, considering that it was published on the eve of the election and contained no statement of facts or argument to rebut or dispute that which is now asserted as its purpose, that is, a reply to an attack made by the Union. Its command, "Rely on Reliance," contained the implied request that the employees should stand by the Company by voting against the Union.

We need not decide, however, whether the newspaper publications standing alone were contemptuous for the reason that they must be considered in connection with other admitted facts and circumstances which so shortly followed, which clearly show that respondents were actively participating in the campaign against the Union. We doubt if respondents' asserted lack of knowledge as to what happened at the plant would be of any assistance upon a hearing. It is not easy to conceive how such a campaign could be carried on by supervisory employees without knowledge on the part of respondents. After having set the example by its publications in the newspapers the Company could not, in our opinion, escape responsibility for the conduct of its supervisory employees, which was merely a continuation of what it had started. Neither is it aided by the pleaded assertion that some of its Union employees wore legends favorable to their side. The fact remains that the supervisory employees were all arrayed on the side of the Company and against the Union. The encouragement given the anti-Union employees on the evening before the election is further proof not only of the Company's active participation in the contest but of material assistance rendered to those opposed to the Union.

It follows from what we have said that respondents by their own admissions have violated our decree and that a hearing on the issues presented would be a useless undertaking. We therefore hold that they and each of them are in contempt, and an order will be entered accordingly.

---

[1] Citing N. L. R. B. v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348; N. L. R. B. v. American Tube Bending Co., 2 Cir., 134 F.2d 993, 146 A.L.R. 1017; N. L. R. B. v. Ford Motor Co., 6 Cir., 114 F.2d 905; Budd Mfg. Co. v. N. L. R. B., 3 Cir., 142 F.2d 922.